# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff, : Case No. 3:07-cr-183
                                                     also 3:11-cv-429

                                                     District Judge Walter Herbert Rice
      -vs-                                  Magistrate Judge Michael R. Merz
                                         :

ANTONIO PIERCE,

      Defendant.

## REPORT AND RECOMMENDATIONS

This is a proceeding under 28 U.S.C. § 2255 in which the Defendant Antonio Pierce seeks relief from his conviction in this Court on one count of conspiracy to distribute and to possess with the intent of distributing in excess of fifty grams of cocaine base and possessing a firearm in furtherance of a drug trafficking conspiracy as charged in Counts One and Twenty of the Indictment.

Defendant pleads the following Grounds for Relief:

> **Ground One:** Petitioner was denied effective assistance of counsel guaranteed him under the Sixth Amendment to the United States Constitution when his counsel failed to object to paragraphs 70 & 71 of the presentence investigation report wherein the probation officer's method of converting the $ 3,900.00 in currency to drug quantities resulted in double counting.
>
> **Ground Two:** Petitioner was denied effective assistance of counsel guaranteed him under the Sixth Amendment to the United States Constitution when his counsel failed to hold the Government too [sic] its burden of proving Petitioner breached the plea agreement, thus, resulting in the Government declining to make a § 5K1.1 downward departure motion.
>
> **Ground Three:** Petitioner was denied effective assistance of counsel when his counsel abandoned him during a critical stage of

1

> the proceeding- i.e., debriefing session, thus, resulting in Petitioner
> not understanding his role as being an informant, and
> being charged with firearms offenses in an attempt to
> assist the Government.

(Motion, Doc. No. 363, PageID 1317-1318.) On the Court's Order (Doc. No. 364), the United States has answered the Motion (Doc. No. 379). Petitioner has filed a Reply in support (Doc. No. 382). In addition, the Court is considering in deciding the Motion the matters added by expansion of the record which Defendant has requested be considered.

## Procedural History

The Indictment (Doc. No. 3) was filed November 13, 2007, and charged Defendant and nine others with various violations of federal law; Defendant was charged in Counts 1-10, 16-20, and 22-23. Petitioner entered into a Plea Agreement (Doc. No. 122) with the United States on January 18, 2008, which committed him to plead to the two counts on which he stands convicted. The Plea Agreement advised him there was a mandatory minimum sentence of fifteen years (180 months) on the two counts to which he was pleading. *Id.* at ¶ 2. After receiving and considering a presentence investigation report from the Probation Department, Judge Rice sentenced Mr. Pierce to 204 months imprisonment (Judgment, Doc. No. 181). He appealed unsuccessfully to the Sixth Circuit. *United States v. Pierce,* Case No. 08-3796 (Dec. 15, 2010)(unpublished, copy at Doc. No. 347). He unsuccessfully sought certiorari in the Supreme Court which was denied July 14, 2011. *Pierce v. United States*, Case No. 10-10680 (Doc. No. 359). The instant Motion to Vacate followed on December 5, 2011.

**Analysis**

All three of Mr. Pierce's claims alleged ineffective assistance of trial counsel. To prevail on such a claim, a § 2255 movant must satisfy the standard adopted in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* ___ U.S. ___, ___, 130 S.Ct. 2250, 2255 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different. A reasonable probability is a probability
> sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177, 1184 (6th Cir. 1987). "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011).

### Ground One

In his First Ground for Relief, Pierce argues the Presentence Report incorrectly converted the $3,900 seized from him when he was arrested into an equivalent amount of crack cocaine, 138 grams which allegedly resulted in double counting.

Defendant argues that even though he admitted to drug dealing and that the $3,900 was the proceeds of drug dealing, "the Government failed to prove by a preponderance of the evidence that the money was not the same cash accrued as a result of the aforementioned sales depicted in ¶ 70 of the PSR." (Motion, Doc. No. 363, PageID 1326.) He argues that the $3,900 was money he had saved up from those sales which occurred on various dates from June 7, 2007, through November 20, 2007. *Id.* He admits that neither he nor his counsel objected to this portion of the PSR at or before sentencing.

The United States notes in response that Pierce stipulated to distribution of between 150 and 500 grams of crack and the PSR confirmed sales of approximately 200 grams just to undercover agents and informants. (Response, Doc. No. 379, PageID 1433.) The 200 grams resulted in a base offense level of 32. *Id.* The 138 grams which were the crack equivalent of the $3,900 in cash did not change the base offense level from 32. *Id.* Therefore, the Government argues, there could have

been no prejudice from counsel's failure to make this argument.

Pierce responds that he "is entitled to have his PSR reflect the exact amount of drug weight attributed to him regardless of the end result of the application of the Guidelines." (Reply, Doc. No. 382, PageID 1473.) He asserts prejudice arising from the fact that he now has been found ineligible by the Federal Public Defender for a reduction in sentence under the Fair Sentencing Act because of the drug quantities. *Id.* at PageID 1473-1474.

Defendant's First Ground for Relief is without merit. Mr. Nolder's letter of October 24, 2011 (PageID 1482), does indeed confirm that 150 grams of crack were needed to reach base offense level 32 under the older guidelines and under the FSA guidelines it takes 280 grams. Thus 80 grams from the converted cash were needed to reach the base offense levels under the new guidelines. But Pierce's claim about the converted cash is purely speculative. He does not deny that the rate of conversion is correct. However, he offers no proof that the cash he had on hand when arrested was in fact all attributable to sales to agents and informants over a six-month period. He does not assert he told his attorney that or ever suggested that there should be an objection to the conversion. Furthermore, his counsel cannot be held to have been ineffective from failure to anticipate the change in the law. *Thompson v. Warden*, 598 F.3d 281 (6th Cir. 2010), *citing Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001).

Pierce himself said nothing on this point at sentencing. Even if the Government would have had to prove there was no double counting if the issue had been raised, Pierce cannot now hold the Government to a burden of proof he waived by making no objection at the time when the Government could have come forward with proof.

The First Ground for Relief should be dismissed with prejudice.

**Ground Two**

In his Second Ground for Relief, Pierce asserts he was deprived of effective assistance of counsel when his trial attorney did not hold the Government to its burden of proving he had breached his Plea Agreement and therefore was not entitled to a motion for downward departure from the Sentencing Guidelines under § 5K1.1.

In arguing this Ground for Relief, Pierce emphasizes all he did to assist the Government in arresting other drug dealers, starting at the time of his own arrest. As to the one person he declined to assist with, a Ms. Denzitt, he does not deny he declined, but offers the explanation that she was a close friend of his girlfriend at the time and a very shrewd person who suspected that Mr. Pierce must have made a deal with the Government to have been released on bond.[1]

It is also true that while he was out on bond, Pierce illegally sold firearms, a bond violation for which he was arrested on Judge Rice's warrant. Pierce argues this is of no consequence because "[n]o where in the plea agreement does it show that the Government or any of its agents advised Petitioner as to his role as being an informant, nor of remaining out of trouble while out on bond." (Motion, Doc. No. 363, PageID 1330.) He claims Judge Rice did not tell him at the plea colloquy hearing that he had to abide by the law and thus he says he was misled about the propriety of making the firearms sale which happens to have been made to a Government informant. If only his attorney had held the Government to its burden of proof, he says, he would have gotten the downward departure motion. *Id.* at PageID 1331-1332.

Mr. Pierce's Second Ground for Relief is also without merit for a number of reasons.

First of all, the Government did not have to prove a breach of the Plea Agreement in order to decline to file a substantial assistance motion. The Plea Agreement very explicitly says:

> d) If the USAO determines, **in its exclusive judgment**, that defendant has both complied with his obligations under this Plea Agreement and

---

[1] Ms. Denzitt's surmise was correct: Petitioner was released on bond by Judge Rice, with the agreement of the United States, shortly after he entered into the Plea Agreement.

6

> provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), the USAO will consider filing a motion with the Court pursuant to: (l) U.S.S.G. § 5KI.I requesting that the Court fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines; and/or (2) 18 U.S.C. § 3553(e), conveying to the Court the authority to impose a sentence below the statutory mandatory minimum penalties at issue in this case (collectively, "substantial assistance motion").

(Plea Agreement, Doc. No. 122, PageID 390, emphasis added.) The authority cited by the United States holds that there is no breach of a plea agreement by the Government when it declines to file a downward departure motion, having reserved discretion to do so. *United States v. Lowdermilk*, 425 Fed. Appx. 500, 504-05 (6th Cir. 2011); *United States v. LeClear*, 365 Fed. Appx. 656, 656 (6th Cir. 2010). Because the Plea Agreement here reserved discretion to the United States as to whether to move for a downward departure, there was no way Mr. Pierce's counsel could have forced the United States to make such a motion.

Mr. Pierce's claim that he was somehow misled by the Court's failure to explain to him that he could not commit a serious felony while on bond is unpersuasive. The very first condition of release in the Order Setting Conditions of Release is that "[t]he defendant shall not commit any offense in violation of federal, state or local law while on release in this case." (Order, Doc. No. 142, PageID 600.) There is nothing esoteric about this condition; it is required by the statute authorizing release on bond. 18 U.S.C. § 3142(c).

Mr. Pierce's claim that he was misled by the text of the informant agreement is also unpersuasive. That document clearly says that his activities as an informant are to be authorized in advance by federal agents. The firearms sale was not. It is also instructive that Pierce's claim about being misled is being made now, substantially after he was sentenced and lost his appeal. He made no mention of this supposed confusion at the time of sentencing.

Pierce argues the Government cannot rely on the Plea Agreement colloquy because promises

were made to him before then.  He misses the significance of the integration clause in the Plea Agreement which provides that there are no other promises besides those in that document.  The clause reads:

**NO OTHER AGREEMENTS**

> 13.  Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. This agreement binds only the USAO and does not bind any other federal, state or local prosecuting authority.

(Doc. No. 122, PageID 392.)

Mr. Pierce was not entitled to decide for himself how much cooperation was sufficient to warrant a motion for downward departure and he made himself useless to the Government as a possible witness by making the unlawful firearms sales.  The Government did not violate the Plea Agreement, so Pierce's counsel was in no position for force the U.S. Attorney to do anything else to keep its part of the bargain.  Ground Two should be dismissed with prejudice.

**Ground Three**

In his Third Ground for Relief, Petitioner asserts his counsel "abandoned" him at a debriefing session with federal agents which led him not to understand his role as an informant and therefore to commit the firearms offenses.

In response the United States points out that a post-plea proffer session[2] has never been held to be a critical stage of criminal proceedings at which a defendant has a right to have his counsel present.  Moreover there is no proof that the United States prevented Defendant from speaking with counsel – in fact, he did so before the session took place.  Finally, as the Government points out, this

---

[2] Defendant's counsel was with him at the December 2007 proffer.  It is a later meeting with agents in March 2008 at which counsel was not present, albeit consulted beforehand.

Motion is the first time Defendant has claimed "confusion" about his informant role, somehow caused by his counsel's absence at the March 3 meeting, misled him into thinking he could sell the firearms. He never made such a claim at his bond revocation or sentencing hearing, but instead essentially admitted the violations. While he now asserts that the firearms sales were an attempt to assist, he never did prior to sentencing. Moreover, he does not claim that this attempt to assist was approved by the agents, but the informant agreement requires him to obtain prior approval.

Ground Three should therefore be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the § 2255 Motion be denied with prejudice. Because reasonable jurists would not disagree with this conclusion, Defendant should be denied any requested certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would not be taken in objective good faith.

March 14, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).